IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TAKAYSIA COLLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:25-cv-00718-BL-SMD |
| | ) | |
| STATE OF ALABAMA BOARD OF PARDONS AND PAROLES, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the court is Defendant State of Alabama Board of Pardons and Paroles' ("Board") Motion to Dismiss. (Doc. 19). On July 9, 2026, the Magistrate Judge recommended that the motion be granted as to Counts I, III, and V, and denied as to Counts II, IV, VI, VII, VIII, and IX. (Doc. 24 at 23). The Board filed objections to the recommendation (doc. 25), and the Plaintiff filed a partial objection to the recommendation (doc. 26).

## I. Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). A district court's obligation to "make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made" requires a district judge to "give *fresh consideration*

to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 673, 675 (1980) (internal quotations and citations omitted) (emphasis in *Raddatz*).

## II. Discussion

The Board objects to the Recommendation's handling of the exhibits and its conclusions with respect to the non-dismissed claims. The Plaintiff objects to the Recommendation's dismissal of Count I, her Title VII Sex/Pregnancy Discrimination Act ("PDA") Failure to Accommodate claim.

### A. The Board's Exhibits

The Board argues that the "factual premise of the Recommendation completely ignores the exhibits submitted by the Board without explanation." (Doc. 25 at 2). The Board alleges that those exhibits establish that Director Ward was the only person who could fire the Plaintiff, that the Plaintiff was on probation and that that status impacts her claims, and that the Plaintiff's named co-workers had more seniority. The Board, relying on Federal Rule of Evidence 201(c)(2), also argues that the court "'must' take notice—particularly in light of [the] Plaintiff's failure to make an argument as to why they should not be subjected to such notice." (Doc. 25 at 7).

"In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Likewise, "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute." *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999). A properly considered document may be used "for the purpose of determining what statements the documents contain and not to prove the truth of the documents'

contents." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999). Moreover, a "court may judicially notice a fact that is not subject to reasonable dispute." FED. R. EVID. 201(b).

With its brief in support of its motion to dismiss, the Board attached an office lease agreement, a lease concerning the parking deck, personnel records of two employees, and the Plaintiff's termination documents. (*See* Docs. 20-1, 20-2, 20-3, 20-4, 20-5). The termination letter provides that the reason for the Plaintiff's "separation is that [her] services [were] no longer required." (Doc. 20-5 at 2). However, the termination letter does not prove that this was the actual reason for the Plaintiff's termination. As stated by the Magistrate Judge, the Plaintiff's Second Amended Complaint alleges that the Plaintiff "was informed that she was terminated for placing her head on her desk, which violated policy." (Doc. 24 at 3) (citing Doc. 17 at 9). Similarly, the court finds that reliance on the Board's remaining exhibits would create, rather than resolve, disputes about seniority, qualification, or who influenced the termination decision.

The court notes that it has considered the Board's exhibits and finds them to be non-dispositive. Although the Magistrate Judge did not expressly discuss the Board's exhibits, he correctly stated that, at this stage, "the court must accept the complaint's well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff." (Doc. 24 at 2 n.1). The court finds that the Magistrate Judge correctly relied on the Second Amended Complaint's factual allegations and, as such, the Board's objection is **OVERRULED**.

### B. Administrative Exhaustion

The Board asserts that "[t]he most serious flaw in the Recommendation's exhaustion analysis is time." (Doc. 25 at 12). The Board states that the EEOC Charge alleges that the harm occurred on a single day, February 14, 2025, and that, if the Plaintiff was harmed at all, such harm happened before February 14, 2025. (Doc. 25 at 12-13). The court is not persuaded.

As noted by the Magistrate Judge, "[a] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994). Still, "the scope of an EEOC complaint should not be strictly interpreted." *Id.* (citation omitted). "The facts alleged in the charge matter most for determining what can reasonably be expected to grow out of an EEOC charge" while "the legal theory the charging party articulates is far less important." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022).

As noted by the Magistrate Judge, the EEOC Charge provides that the Plaintiff informed the Board she was pregnant, requested that the Board provide her with a closer parking spot, received a closer parking spot after speaking with another employee, was yelled at by Bradford for going over his head, and was later investigated for laying her head on her desk despite having permission to do so while on her scheduled break. (Doc. 24 at 7). The Magistrate Judge determined that the "allegations contained within [the EEOC Charge] are sufficient to trigger an EEOC investigation into whether the Board failed to accommodate [the Plaintiff's] pregnancy-related requests." (Doc. 24 at 7). The court agrees. As stated above, the facts alleged in an EEOC Charge "matter most for determining what can *reasonably be expected to grow out of an EEOC charge*," not how quickly the EEOC processed the Charge. *Patterson*, 38 F.4th at 1345 (emphasis added). As such, the Board's exhaustion objection is **OVERRULED**.

**C. Qualification During Working-Test Period**

The Board next argues that "[b]ecause [the] Plaintiff did not complete the working test mandated by law, she was never qualified to be a pardons and parole specialist as a matter of law." (Doc. 25 at 6). Section 36-26-21 provides a working-test period which commences upon appointment and continues not less than six months; during this test period, an appointing authority

may remove an employee if "the working test indicates that such employee is unable or unwilling to perform his duties satisfactorily or that his habits and dependability do not merit his continuance in the service." Notably, Section 36-26-21 does not provide that an individual appointed to a position is unqualified to hold or perform that position until the period ends.

The Board cites to *Wright v. Southland Corporation* for the proposition that "an individual is qualified for a position if she meets the criteria the employer specifies for the position." (Doc. 25 at 5) (citing *Wright v. Southland Corp.*, 187 F.3d 1287, 1300 n.16 (11th Cir. 1999)). However, the sentence associated with this footnote states "discrimination is possible despite the fact that the person is not qualified for the relevant position." *Wright*, 187 F.3d at 1300. Here, the Second Amended Complaint alleges that the Board hired the Plaintiff as a Probation and Parole Specialist and that the Plaintiff "was qualified for the position as she was already successfully performing the position," that she "was able to perform the essential functions of [her] job," and that she was told "there was nothing wrong with [her] work and that there were no missing files when [she] turned her work in." (Doc. 17 at 9, 13, 20). These allegations make it plausible that the Plaintiff was at least somewhat qualified to perform the duties of a Probation and Parole Specialist, a job for which she was hired by the Board. Moreover, the relevant working-test period statute authorizes removal during the test period. It does not, however, establish that every employee serving a working-test period is categorically unqualified. As such, the Board's qualification objections are **OVERRULED**.

### D. Title VII/PDA Claims

#### 1. Count I – Failure to Accommodate

The Plaintiff objects to the Magistrate Judge's analysis "under the *McDonnell Douglas* evidentiary framework" rather than "the pleading standard as to whether the Plaintiff has alleged

a plausible claim." (Doc. 26 at 2). The Plaintiff also asserts that "comparators are not required, especially at the pleading stage, to allege Title VII violations." (Doc. 26 at 3). While the Plaintiff is correct, the PDA statute itself provides that pregnant employees "shall be treated the same for all employment-related purposes … *as other persons not so affected but similar in their ability or inability to work*." 42 U.S.C. § 2000e(k) (emphasis added). Thus, pursuant to the PDA statute, the Plaintiff must allege facts that make the claim plausible. As the Magistrate Judge noted, the Second Amended Complaint "fails to allege sufficient facts to show that the Board accommodated non-pregnant employees 'similar in their ability or inability to work,' causing [the Plaintiff's] Title VII/PDA claim to fail." (Doc. 24 at 10-11). The court agrees. Moreover, the court agrees with the Magistrate Judge that the Plaintiff has failed to allege that other employees "had similar needs for accommodation, requested accommodation for those needs, and were granted a parking accommodation based on those needs." As such, the Plaintiff's objection is **OVERRULLED**.

**2. Count II – Disparate Treatment**

The Board argues that the Plaintiff must plead sufficient facts to make it plausible that "the Board's disciplinary policies were applied differently to her." (Doc. 25 at 20). Further, the Board argues that the recommendation "imputes the lowest level supervisor's animus onto the Board to find that the [Second Amended Complaint] plausibly alleges intentional discrimination." (Doc. 25 at 22). In her Second Amended Complaint, the Plaintiff alleges that Bradford "didn't care [that the Plaintiff] was pregnant," denied her request for a closer parking spot, and told her to "get some f**king work done since [she] want[ed] to go over [his] f**king head." (Doc. 17 at 6-7). The Plaintiff further alleges that after the incident, her "work started to be criticized, and she was accused of files being missing," and she was terminated after an investigation because "she

violated policy." (Doc. 17 at 9-10). The Magistrate Judge found that this "sequence of events … taken together, plausibly suggest intentional discrimination." (Doc. 24 at 12). The court agrees.

The Supreme Court has held that "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (emphasis in original). Likewise, "causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999).

The Magistrate Judge noted that whether the Plaintiff "can ultimately establish intentional discrimination is a question for summary judgment or trial." (Doc. 24 at 12-13). The court finds that the Plaintiff need not establish at the pleading stage that Bradford, or anyone else who investigated the Plaintiff, caused Director Ward's decision to terminate the Plaintiff. At the Rule 12(b)(6) stage, the court draws reasonable inferences from the Plaintiff's Second Amended Complaint and whether Director Ward acted independently or relied on information provided to him by Bradford is a factual question that remains a matter for discovery. The Magistrate Judge found that the alleged sequence of events, "taken together, plausibly suggest[s] intentional discrimination." (Doc. 24 at 12). The court agrees. At this stage, the court will not determine whether the Plaintiff will ultimately establish cat's-paw liability, whether Bradford's alleged conduct proximately caused the termination, or whether Director Ward independently investigated and made the termination decision. The Second Amended Complaint need only plausibly allege a basis for relief at this stage. As such, the Board's objection to Count II is **OVERRULED**.

### E. Pregnancy Workers Fairness Act ("PWFA") Claims

#### 1. Count IV – Failure to Accommodate

The Board argues that "[a]s to the parking space, assuming there was a delay, it was far shorter than the three-month delay approved by the Eleventh Circuit in the Rehabilitation Act context" as discussed in *Mullin v. Secretary, U.S. Department of Veterans Affairs*, 162 F.4th 1296, 1307-08 (11th Cir. 2025). (Doc. 25 at 23). The Board further states that "[i]t is unclear from the Recommendation whether its conclusion regarding the sufficiency of the [Second Amended Complaint]'s allegations relates to just the parking accommodation or the head-on-the-desk accommodation." (Doc. 25 at 23).

The PWFA makes it unlawful for an employer to "not make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee," unless the employer demonstrates that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 2000gg-1(1). "In assessing claims of unreasonable delay, courts consider the length of the delay, the reasons for the delay, whether the employer has offered any alternative accommodations while evaluating a particular request, and whether the employer has acted in good faith." *Mullin v. Sec'y, U.S. Dep't of Veterans Affs.*, 162 F.4th 1296, 1307 (11th Cir. 2025) (internal citations omitted). The *Mullin* court found that a three-month delay in granting a requested accommodation was not unreasonable because the employer gave intermediate additional accommodations.

The court notes that *Mullin* does not make any delay shorter than three months reasonable as a matter of law. In *Mullin*, the Eleventh Circuit evaluated a developed summary judgment record and considered the length and reasons for the delay, interim accommodations, and the employer's good faith. Here, the Magistrate Judge found that "the fact that the parking

accommodation was ultimately granted after a delay does not necessarily defeat the claim." (Doc. 24 at 16). The court agrees. At the motion to dismiss stage, the Plaintiff alleges that closer parking spots were vacant, that Bradford denied her request, and no further interactive process occurred. Thus, at this stage and on the alleged facts, the court will not determine the reasonableness of the alleged delay as a matter of law.

The Plaintiff also alleges that she "asked her supervisor … if she could lay her head down on her desk during her 15-minute breaks, to which she told her it was not a problem, it was her break, and she could use her break how she wanted to." (Doc. 17 at 5). The court notes that, because the requested relief from the Plaintiff to rest her head on her desk was granted, it does not support a failure-to-accommodate claim. Thus, the court finds that Count IV proceeds only on the alleged delay in providing the Plaintiff with a closer parking spot. With that clarification, the Board's objection as to Count IV is **OVERRULED**.

**2. Count VI – Retaliation**

The Board argues that "Bradford did not and could not fire [the] Plaintiff as a matter of law" and that the Second Amended Complaint "does not allege that Director Ward knew of [the] Plaintiff's pregnancy, her requested accommodations, or the actions of Bradford or anyone else identified in the" Second Amended Complaint. (Doc. 25 at 25). The Board relies on *McCullough v. Finley* for the proposition that "[f]actual allegations, although consistent with a plaintiff's theory, may fail to state a plausible claim 'given more likely explanations.'" 907 F.3d 1324, 1335 (11th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). The Board alleges that Bradford cussed the Plaintiff because she went over his head and not because she requested an accommodation. (Doc. 25 at 25).

The PWFA prohibits adverse action "on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee." 42 U.S.C. § 2000gg-1(5). The Magistrate Judge found that the Second Amended Complaint "sufficiently alleges that [the Plaintiff] was terminated for exercising the accommodation to lay her head on her desk and raises a reasonable inference that she was terminated for requesting a parking accommodation." (Doc. 24 at 17). The court agrees. As stated above, the roles of Director Ward, Bradford, Hudson, and Ishman and who had influence in the termination of the Plaintiff are factual questions that remain a matter for discovery. As such, the Board's objection to Count VI is **OVERRULED**.

### F. Rehabilitation Act Claims

The Board alleges that "the Recommendation should have included in its analysis Plaintiff's status as a probationary employee in her working[-]test period" and that "the Recommendation reached incorrect conclusions as to whether the [Second Amended Complaint] pleads any Rehabilitation Act claims." (Doc. 25 at 27). The Board argues that the Plaintiff must allege her condition was "the sole reason" for the challenged termination and that the reasons for the Plaintiff's challenged termination cannot be imputed onto Director Ward. (Doc. 25 at 28-29). As explained above, the court finds that the qualification argument fails.

#### 1. Count VII – Failure to Accommodate

The Board states that it "raises an objection similar to the one it raised to the Recommendation's handing of the PWFA accommodation claim." (Doc. 25 at 29). "[A]n employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is otherwise qualified, and unless the employer can show undue hardship." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th

Cir. 2007). Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases. *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

For the reasons given in the court's discussion of Count IV, the court finds that the alleged parking delay states a plausible claim. Further, as stated above, because the requested relief from the Plaintiff to rest her head on her desk was granted, it does not support a failure-to-accommodate claim. Thus, the court finds that Count VII proceeds only on the alleged delay in providing the Plaintiff with a closer parking spot. The Magistrate Judge found that the parking allegations were "sufficient to plausibly allege the third element of a Rehabilitation Act failure-to-accommodate claim." (Doc. 24 at 20). The court agrees. Thus, with the clarification that Count VII proceeds only on the alleged delay in providing the Plaintiff with a closer parking spot, the Board's objection as to Count VII is **OVERRULED**.

**2. Count VIII – Disparate Treatment[1]**

The Board "adopts and incorporates … its objection to Plaintiff's Title VII/PDA disparate treatment claim and the reasons therefore" for this objection. (Doc. 25 at 30). For this claim, the Plaintiff must allege that she was terminated "solely by reason of" her disability. 29 U.S.C. § 794(a). Further, "[i]t is not enough for a plaintiff to demonstrate that an adverse employment action was based partly on [her] disability." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). However, the court finds that the Plaintiff need not prove that she was terminated "solely by reason of" her disability at the pleading stage.

In her Second Amended Complaint, the Plaintiff alleges that the Board "terminated [her] *because* of her disability." (Doc. 17 at 22) (emphasis in original). The Plaintiff alleges that this

[1] As noted in the Recommendation of the Magistrate Judge, the Second Amended Complaint "misidentifies this claim as Count XI." (Doc. 24 at 20 n.18). Thus, as the Magistrate Judge and the Board does, the court will also refer to the claim by its correct numerical order as Count VIII.

termination was tied to her putting her head down in violation of a policy. To the extent that the Board argues this claim should fail because the Plaintiff has failed to allege that she was terminated *solely* due to her disability, the court disagrees. The Plaintiff's request to put her head down during breaks was directly related to her pregnancy, which was initially approved. The Magistrate Judge found that the Second Amended Complaint alleges a sequence of events that "taken together, plausibly suggests intentional discrimination because of her pregnancy-related disability." (Doc. 24 at 21). The Magistrate Judge further found that, "[a]ccepting the [Plaintiff's] allegations as true and drawing all reasonable inferences in [the Plaintiff's] favor, the court concludes that [the Plaintiff] has plausibly alleged that the Board terminated her because of her alleged disability." (Doc. 24 at 21). Thus, the court agrees that, at this stage, the Plaintiff has plausibly alleged that the Board terminated her because of her disability. As the Magistrate Judge further found, whether the Plaintiff can ultimately establish sole causation "is a question better addressed on a developed factual record at summary judgment or trial." (Doc. 24 at 21). The court agrees. As such, the Board's objection to Count VIII is **OVERRULED**.

**3. Count IX – Retaliation[2]**

The Board again adopts and incorporates its objection to the Plaintiff's PWFA retaliation claim. (Doc. 25 at 30). To state a retaliation claim, a plaintiff must show that "(1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016). "The first element may be met by a request for a reasonable accommodation." *Id.*

---

[2] As noted in the Recommendation of the Magistrate Judge, the Second Amended Complaint "misidentifies this claim as Count XII." (Doc. 24 at 22 n.19). Thus, as the Magistrate Judge and the Board does, the court will also refer to the claim by its correct numerical order as Count IX.

As stated previously, the Plaintiff alleges that she requested accommodations, that Bradford became angry after he went over his head and obtained a closer parking spot, and, after an investigation, the Plaintiff was terminated. (*See* Doc. 17 at 7-10). The Magistrate Judge found that "[c]onstruing these allegations in the light most favorable to [the Plaintiff], the [Second Amended Complaint] plausibly alleges a causal link between [the Plaintiff's] requests for accommodation and her termination." (Doc. 24 at 22). The court agrees. Furthermore, as stated previously, the court draws reasonable inferences from the Plaintiff's Second Amended Complaint and whether Director Ward acted independently or relied on information provided to him by Bradford is a factual question that remains a matter for discovery. As such, the Board's objection to Count IX is **OVERRULED**.

Because the Plaintiff and the Board failed to identify an error in the Magistrate Judge's factual findings or legal conclusions, the court **OVERRULES** the Plaintiff's partial objection (doc. 26) and the Board's objections (doc. 25). However, as stated above, the court clarifies that Counts IV and VII proceed only on the alleged delay in providing closer parking.

## III. Conclusion

After careful review of the file and upon consideration of the recommendation of the Magistrate Judge, the court **ADOPTS** the recommendation of the Magistrate Judge and **ORDERS** as follows:

1. The Plaintiff's Partial Objection to the Report and Recommendation of the Magistrate Judge (doc. 26) is **OVERRULED**.
2. The Board's Objections to the Report and Recommendation of the Magistrate Judge (doc. 25) are **OVERRULED**.

3. The Board's Motion to Dismiss (doc. 19) is **GRANTED** as to Counts I, III, and V. Those claims are **DISMISSED without prejudice**. The Board's Motion to Dismiss is further **GRANTED** as to the portions of Counts IV and VII to the extent that those counts rely on the Plaintiff's request to lay her head down during breaks, and those portions are **DISMISSED with prejudice**. Counts IV and VII otherwise remain pending based on the alleged delay in providing closer parking.
4. The Board's Motion to Dismiss (doc. 19) is **DENIED** in full as to Counts II, VI, VIII, and IX, as well as Counts IV and VII to the extent they allege a delay in providing closer parking.
5. The Board's Motion to Strike (doc. 28) is **DENIED** as moot.[3]

**DONE** and **ORDERED** on this the 31st day of August, 2026.

**BILL LEWIS**
UNITED STATES DISTRICT JUDGE

[3] The Board filed a Motion to Strike (doc. 28) the Plaintiff's Opposition to the Board's Objection to the Magistrate Judge's Recommendation (doc. 27). The Board argues that "[n]ow, more than two weeks after the deadline for filing objections, Plaintiff has filed an opposition to the Board's Objections." (Doc. 28 at 2). Further, the Board argues that "[i]n addition to failing to provide authority in the Opposition [permitting the submission of such a filing], Plaintiff filed without leave of court, in the absence of expressed permission from the Recommendation, and outside of the Recommendation-imposed deadline for filings related to the Recommendation." (Doc. 28 at 2). However, Federal Rule of Civil Procedure 72(b)(2) provides that "[a] party may respond to another party's objections within 14 days after being served with a copy." Thus, the Plaintiff was permitted to file a response to the Board's objection pursuant to the Rules of Federal Procedure. However, the court notes that the Plaintiff filed her response 15 days after the Board's objection was filed. Nevertheless, the court notes that it did not consider the Plaintiff's Response in Opposition to the Board's Objection. The court's determination of the Board's Motion to Dismiss relies on the Magistrate Judge's Report and Recommendation, the Board's Objection to the Recommendation, the Plaintiff's Partial Objection to the Recommendation, and a *de novo* review of the record pursuant to Rule 72(b)(3), FED. R. CIV. P.